UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SHARON ELLZEY                                          CIVIL ACTION

VERSUS                                                 NO.  10-899

CATHOLIC CHARITIES ARCHDIOCESE                         SECTION  "N"  (5)
OF NEW ORLEANS


**ORDER AND REASONS**

Before the Court is the Motion for Summary Judgment (Rec. Doc. 24), filed by

Defendant Catholic Charities Archdiocese of New Orleans ("CCANO").  This motion is

opposed. (See Rec. Doc. 25[1]). Subsequent replies were filed by each of the parties.  (See Rec.

Docs. 33 and 35).  After considering the memoranda of the parties, the exhibits attached thereto,

and the applicable law, the Court grants this motion in its entirety.

**I.      BACKGROUND**

On June 23, 2008 Plaintiff Sharon Ellzey ("Plaintiff" or "Ellzey") was hired by CCANO

as a business manager for Crescent House. (Rec. Doc. 1, ¶2).  Prior to that, Ellzey had submitted

a signed employment application to CCANO wherein she represented that she had obtained a

Master's of Business Administration in informational technology from the University of

Phoenix. (Exh. I to Rec. Doc. 24, pp. 95-96 and Depo. Exh. 3 attached thereto). However, at that

time, Ellzey did not have such a degree. (Exh. I to Rec. Doc. 24, pp. 96-98).  Ellzey also

submitted a resume to CCANO wherein she indicated that she had a Master's of Business

Administration in technology management. (Exh. I to Rec. Doc. 24, , pp. 98-100 and Depo. Exh.

4 attached thereto).  However, Ellzey had not received that degree. (Exh. I to Rec. Doc. 24, p.

---

[1]        Rec. Doc. 32 is a duplicate of the Opposition at Rec. Doc. 25.

100).  Further, when Ellzey began her employment with CCANO, she signed a Payroll Application in which she again falsely represented that she had obtained a Master's of Business Administration in informational technology. (Exh. I to Rec. Doc. 24, , pp. 107-108 and Depo. Exh. 11 attached thereto). Still further, in January of 2009, Ellzey signed a routine performance appraisal by her immediate supervisor, Mary Claire Landry ("Landry"), acknowledging that the appraisal was reviewed with her. On the performance appraisal, it is written that "[a]lthough Sharon does have a MBA, it is clear that she is limited in her accounting knowledge and business principles...." (See Exh. I to Rec. Doc. 24, p. 171 and Depo. Exh. 16 attached thereto). Ellzey did not actually complete the master's degree program until almost two years later, in April of 2010, *after* she had been terminated from CCANO. (Exh. I to Rec. Doc. 24, p. 8).

During a routine audit of personnel records of various personnel, including but not limited to Ellzey, it was discovered by the CCANO Human Resources Department that Ellzey's and other employees' educational and credential records were lacking documentation. (Exh. II to rec. Doc. 24, ¶6). When no such documentation was received from Ellzey, Kristin Callahan ("Callahan"), CCANO's Director of Human Resources, contacted the University of Phoenix and was informed that Ellzey had not obtained a Master's degree from the University of Phoenix. (Exh. II to Rec. Doc. 24, ¶9).

On March 17, 2009, following her conversation with the University of Phoenix and prior to any knowledge of any alleged grievance of any nature by Ellzey involving Landry, Callahan made the decision to terminate Ellzey in accordance with the employment policies of CCANO for falsification of her employment records. (Ex. II to Rec. Doc. 24,¶10).

The CCANO HR Policy regarding termination required that one of several specified

2

individuals be consulted prior to the involuntary termination of an employee. (Exh. II to Rec. Doc. 24, ¶7c). In accordance with that policy, Callahan consulted with Beth Tinto, the Archdiocese of New Orleans Human Resource Director. (Exh. II to Rec. Doc. 24, ¶11). Following her consultation with Tinto, Callahan contacted Ellzey's supervisor, Landry, and instructed Landry to inform Ellzey of her termination for falsification of employment records. (Exh. II to Rec. Doc. 24, ¶12).

After becoming aware that Landry had not informed Ellzey that she was terminated for falsification of her employment records, Callahan formally notified Ellzey of her termination on March 23, 2009. She was told that the reason for her termination was because she falsified her academic credentials with respect to having a master's degree. (Exh. I to Rec. Doc. 24, pp. 117-118; Exh. II to Rec. Doc. 24, ¶13).

CCANO had a sexual harassment policy in place, which required employees with complaints of sexual harassment to bring their concerns to management, including the employee's own supervisor, program director, administrator, or division director. (Exh. II to Rec. Doc. 24,¶7d). Although Ellzey alleges that she made four complaints to HR about alleged "sexual harassment [by Landry] and other matters", the HR department directed her to put them in writing. (Rec. Doc. 1, ¶10). CCANO denies that any such verbal complaints of sexual harassment were ever made. Ellzey alleges that she filed a written formal grievance the same day her employment was terminated: March 23, 2009. (Rec. Doc. 1, ¶10). Notably, although the cover letter to her written grievance is dated March 19, 2009, it mentions matters through March 23, 2009, and was not actually provided to CCANO until after Ellzey's meeting with Callahan on March 23, 2009, wherein she was terminated. (Exh. I to Rec. Doc. 24 and Depo. Exh. 13-15

3

attached thereto). Indeed, Ellzey testified that she discussed her grievance with Landry's supervisor only *after* she was terminated. (Exh. I to Rec. Doc. 24, pp. 208-210).  In her Complaint, Ellzey alleges that she thought that complaining to Landry's supervisor would do no good. (Rec. Doc. 1, ¶10).

It is undisputed that Ellzey's only Charge of Discrimination against CCANO was signed by Ellzey on June 4, 2009 and received by the New Orleans field office on June 12, 2009. (Exh. I to Rec. Doc. 24, pp. 87-88, 92 and Depo. Exh. 1 attached thereto). In her EEOC Charge, Ellzey alleges only sex discrimination and retaliation. In the "Particulars" section of the charge, Ellzey explained:

> On June 23, 2008, I was hired for the position of Business Manager at a salary of $38,000 per year. I was discharged on March 23, 2009. The Respondent employs more than 100 persons.
>
> According to Mary Claire Landry, Supervisor, I was discharged for allegedly falsifying my employment application with respect to the status of my master's degree.
>
> I believe that I have been discriminated against because of my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Exh. I to Rec. Doc. 24 Depo. Exh. 1 attached thereto).

Ellzey's Complaint alleges sexual harassment by her immediate supervisor, Landry, consisting of alleged "'hugs' with sensual back rubs" and "observations about her clothes, buttocks, weight (she was losing weight), and hairstyles in relation [sic] her looking sexy". (Rec. Doc. 1, ¶¶6).  The Complaint also alleges retaliation based on sexual harassment.  (Rec. Doc. 1, ¶¶9-11).

4

## II.      DISCUSSION

### A.      Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the

light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." See *id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d

434, 440 (5th Cir.2002).

### B.    Analysis

This Court first addresses CCANO's argument that Plaintiff has failed to exhaust her administrative remedies.  It is well-settled that before a plaintiff can bring an action in federal court under Title VII, he/she must first exhaust available administrative remedies. See 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir.2002); *Reed v. Northrop Grumman Ship Sys. Inc.*, No. Civ.A. 04-1214, 2004 WL 2115596, at *1 (E.D.La. July 15, 2002). Title VII's exhaustion requirement is satisfied only if a plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice. *Taylor*, 296 F.3d at 378-79 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir.1996)). Failure to comply with this requirement will result in dismissal of a plaintiff's claim. See *Reed*, 2004 WL 2115596, at *2. For reasons similar to those stated in *Barnes v. Rite-Aid*, 2010 WL 4553493, (E.D. La. Oct. 28, 2010), the Court finds that Ellzey has failed to exhaust her administrative remedies as to these claims.

Plaintiff concedes that the Charge she filed with the EEOC does not allege sexual harassment or retaliatory discharge for having made a sexual harassment complaint, which are the only allegations raised in Plaintiff's Complaint.  (See Rec. Doc. 1, Counts 1 and 2,  Rec. Doc.24-6, ¶29; Rec. Doc. 28-3, ¶1, Exh. I to Rec. Doc. 24 and Depo. Exh. 1 attached thereto). While "retaliation" is checked off in the Charge, the Charge itself alleges only discrimination based on sex, which is separate and apart from sexual harassment.  The word "harassment", or any variation thereof, a claim on which this *entire* case rests, is not mentioned *once* in the only EEOC Charge filed by Plaintiff.

To address CCANO's argument, Plaintiff asserts:

> As the first paragraph of her Statement ( c) shows the EEOC charge
> was preceded by an EEOC declaration of which a copy was sent to
> defendant such that it had a reasonable opportunity to defend itself.
> This declaration alleges sexual harassment (nos. 4-6) and retaliatory
> discharge due, in part, to her complaints of sexual harassment. (No.
> 13).

(Rec. Doc. 25, p. 4).  This Declaration (See Exhibit 1 to Rec. Doc. 25), was allegedly sent to the

EEOC by Plaintiff's attorney on May 12, 2009, a few weeks before Plaintiff signed the Charge

of Discrimination on June 4, 2009.  (See Exhibit 3 to Rec. Doc. 25, Depo. Exh. 1 attached to

Exh. I to Rec. Doc. 24).  As CCANO points out, and on the showing made, there is no indication

that the EEOC (1) received this Declaration or (2) considered it in its investigation of Plaintiff's

Charge, which undeniably ONLY references sex discrimination and retaliation therefor.

This glaring omission is somewhat similar to the fact scenario, which appears quite often

in the case law, wherein a plaintiff fails to check the appropriate box on the EEOC charge form.

See *Luna v. Lockheed Martin Corp.*, 54 Fed. Appx. 404 (5th Cir.2002)("Here, in his EEOC

charge, Luna failed to mark the box indicating his intention to bring a claim of national origin.

Rather, Luna only checked the box indicating his intention to bring a claim of retaliation.

Because Luna did not raise [a] national origin discrimination claim in his EEOC charge, Luna

failed to exhaust his administrative remedies as to that claim. Therefore, we conclude that the

district court correctly granted Lockheed's motion for summary judgment on Luna's claim of

national origin discrimination."); See also *Teffera v. North Texas Tollway Authority*, 121 Fed.

Appx. 18, 21 (5th Cir.2004) (noting that where plaintiff did not check the retaliation box on his

EEOC charge, plaintiff did not exhaust his claim with the EEOC and therefore could not bring

the claim in a civil action).

8

In the *Barnes* decision (*supra*), which the Court finds instructive here, Plaintiff argued that he exhausted his retaliation claim with the EEOC because, although he did not check the retaliation box on his Charge, he checked the retaliation box on an EEOC intake form. The *Barnes* Court noted that the Fifth Circuit had rejected a similar argument made by the plaintiff in *Teffera v. North Texas Tollway Authority*, 121 Fed. Appx. 18, 21 (5th Cir.2004) , wherein the Court stated: "Although Teffera checked 'retaliation' on the pre-charge EEOC form, he did not do so on the EEOC charge; there, he referenced only discrimination because of national origin. The district court correctly dismissed Teffera's Title VII retaliation claim for not exhausting it with the EEOC." *Teffera*, 121 Fed. Appx. at 21.

In *McCray v. DPC Indus., Inc.*, 942 F.Supp. 288 (E.D.Tex.1996), a similar conclusion was reached, i.e., that the plaintiff could not assert a Title VII retaliation claim because the claim was included in the EEOC intake questionnaire attached to the charge, rather than in the actual charge. *McCray*, 942 F.Supp. at 295. The Court noted that "[i]ntake questionnaires and EEOC discrimination charges are two separate things." *Id.* (citation omitted). It reasoned that treating the questionnaire as a substitute for the charge would "dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not the questionnaire." *Id.* (*citation omitted*). See further *Boudreaux v. St. Charles Mosquito Control, Inc.*, 2010 WL 2854276, at *4 (E.D.La. July 19, 2010) ("The policy behind checking the right boxes and clearly articulating a factual basis and/or supplementing charges with additional information serves to enhance the administrative enforcement process by ensuring that the EEOC can conduct a full investigation while also providing the employer with advanced notice of the claim and opportunity to resolve the dispute.")

9

It should be noted that the Fifth Circuit has found that a plaintiff's failure to check a box on an EEOC charge is not always a fatal error. In *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1960), the court found that the plaintiff's failure to check the national origin box on her charge was a mere "technical defect or omission." *Id.* at 462. The Court further noted that the selection of which box to check "is in reality nothing more than the attachment of a legal conclusion to the facts alleged." *Id.* According to *Sanchez* court, "the crucial element of a charge of discrimination is the factual statement [particulars section] contained therein." *Id.* Because plaintiff alleged facts sufficient to give rise to a national origin discrimination claim, the court found that plaintiff's failure to mark the appropriate box did not bar her from including in her judicial complaint allegations regarding national origin discrimination. *See id.* at 463-64.

Unlike the plaintiff in *Sanchez*, however, nowhere in Plaintiff's one and only Charge of Discrimination did she allege facts which would give rise to a claim of sexual harassment or retaliation for complaining about sexual harassment.  Indeed, Plaintiff's last sentence in the "Particulars" section of the Charge states: "I believe that I have been discriminated against because of my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended."  (Depo. Exh. 1 attached to Exh. I to Rec. Doc. 24). This statement contains no claim of sexual harassment or retaliation for complaining about such harassment, nor allegations which would give rise to such claims. Several courts in the Fifth Circuit have held that a plaintiff fails to exhaust his/her administrative remedies as to a particular claim if his charge does not contain the claim or make allegations giving rise to the claim. See *Oramous v. Military Dep't of Louisiana*, 2007 WL 2344921, at *2 (E.D.La. Aug. 15, 2007) (court found that in addition to not checking the retaliation box on the charge form, there was "no mention of any retaliatory

conduct in the particulars of the charge." Therefore, plaintiff failed to exhaust her administrative remedies as to her retaliation claim.); *McCray*, 942 F.Supp. at 294 ("McCray did not check the retaliation box on his EEOC charge, and the text of the charge does not refer to retaliation or contain any factual allegations to support a retaliation claim. This failure to exhaust administrative remedies bars McCray's retaliation claim in this lawsuit."); *May v. Fedex Freight Se., Inc.*, 649 F.Supp.2d 451, 456 (M.D.La.2009)("The fact that plaintiff failed to check the box by 'Retaliation' and make any other allegations of retaliation with respect to her discrimination claims confirms that she has failed to exhaust administrative remedies on this claim. A plethora of Fifth Circuit jurisprudence supports the Court's finding ."); *Lee v. Kroger Co.*, 901 F.Supp. 1218, 1224 (S.D. Tex 1995) (where Plaintiff only checked the retaliation box and stated in the particulars of the charge: "I believe that I have been discriminated against in retaliation for filing two charges against the company in violation of Title VII ..." and the court found that plaintiff only set forth an allegation of retaliation and therefore was precluded from maintaining additional claims of racial discrimination and harassment.).

Furthermore, the Court concludes that Plaintiff's Charge of Discrimination is insufficient to bring a sexual harassment claim or a retaliation claim for complaining about such harassment because such claims are not within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." The Fifth Circuit and numerous courts in the Eastern District of Louisiana have held that a claim is not reasonably expected to grow out of a Plaintiff's EEOC Charge where the claim is not alleged in a charge. See *Slocum v. Guardsmark, L.L.C.*, No. 08-685, 2008 U.S. Dist. Lexis 111360, at *7 (E.D.La. Dec. 20, 2008); *Kebiro v. Walmart,* 193 Fed. Appx. 365, 367 (5th Cir.2006); *Thomas v. Dep't of Crim. Justice*,

220 F.3d 389, 395 (5th Cir. 2000); *Huda v. Lockheed Martin*, 2008 U.S. Dist. LEXIS 12325,

2008 WL 191300 (E.D.La.2008); *Gomez v. Orleans Parish Sch. Bd.*, 2005 U.S. Dist. LEXIS

17810, 2005 WL 2050285 (E.D.La.2005).

   The Court also finds it significant that Plaintiff presumably had counsel when she signed

her EEOC Charge, because such counsel had previously allegedly forwarded a Declaration to the

EEOC.  Surely, the absent harassment allegation should have been included in such Charge -

especially because Plaintiff's entire lawsuit centers on such allegations.  Last, at no point after

the initial Charge was filed did Plaintiff seek to file a second charge alleging harassment and

retaliation therefor.  She seemingly chose to merely skip that step and, instead, file a Complaint

in this Court without having properly exhausted her administrative remedies for the only claims

alleged therein.  Therefore, because Ellzey has not complied with Title VII's exhaustion

requirement as to these claims, they are hereby dismissed. For that reason, the Court does not

need to reach the merits. However, were this Court to reach the merits, Plaintiffs' claims have *at

least* two fatal flaws.

   First, the alleged misconduct does not rise to the level of actionable harassment. "Title

VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected

classmember's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Public

Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir.) (*internal quotations omitted*), *cert.

denied*, 528 U.S. 963 (1999). Thus, to establish a hostile environment claim, a plaintiff must

show that the complained-of conduct was "severe or pervasive enough to create an objectively

hostile or abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

This objective determination is made by looking at all the circumstances, including "the

frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 2002 WL 314011 *6 (5th Cir. Mar 15, 2002). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Shepherd*, 168 F.3d at 874 (intermittent "boorish and offensive" sexual comments, attempts to look down plaintiff's dress, and touching plaintiff's arm did not establish hostile environment) (*internal quotations omitted*).

In her Complaint, Plaintiff alleges sexual harassment by Landry consisting of alleged "hugs with sensual back rubs" allegedly occurring once every 1-2 weeks and "observations about her clothes, buttocks, weight (she was losing weight) and hairstyles in relation to her looking sexy allegedly occurring once every week." (Rec. Doc. 1, ¶5 and ¶6). Assuming the truth of these allegations, the Court finds that, under existing case law, these alleged instances and any other unwelcomed physical touching-allegations were neither severe nor physically threatening, though quite unwelcome and indeed inappropriate. See *Hockman v. Westward Communications*, *L.L.C.*, 282 F.Supp.2d 512 (E.D.Tex.2003) (finding male co-worker's conduct that included commenting about a former employee's nice shape; brushing up against plaintiff; once popping plaintiff on the buttocks with a rolled up newspaper; once attempting to kiss plaintiff and grab her breast at the same time; and making other inappropriate comments of a sexual nature; to be boorish and offensive, but did not create a hostile or abusive work environment); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.1993) (finding that conduct that included attempting to kiss plaintiff once at bar and twice at work, several incidents of unwanted

touching, placing "I love you" signs in her work area, and asking her out on dates were not sufficient for actionable harassment).

The second (and perhaps most significant) fatal flaw to Plaintiffs' retaliation case is that Plaintiff does not dispute that she falsified her employment records.  It is uncontested that Plaintiff's employment application, resume' and payroll application each falsely represented that Plaintiff had obtained a master's degree in business administration. ( Exh. I to Rec. Doc. 24, pp. 2, 6-11, 13-14; Depo Exhibits 3-4, 11 to Exh. I to Rec. Doc. 24).  Indeed, CCANO's Statement of Uncontested Material Facts states, "The decision to terminate was in accordance with CCANO employment policies and procedures on falsification of records and dishonesty and for no other reason."  (See Rec. Doc. 24-6, ¶26). Tellingly, while Plaintiff argues that an M.B.A. was not required for her position[2], she also "admits all of defendant's statements . . . ". (Rec. Doc. 25-1, p. 1). Accordingly,

## III.   CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 24)** is **GRANTED** in its entirety.

New Orleans, Louisiana, this 24th day of June, 2011.

_____
KURT D. ENGELHARDT
United States District Judge

---

[2]        The Court agrees with CCANO that the issue of whether a master's degree was a prerequisite for Plaintiff's position is immaterial.  What is important is that Plaintiff falsified her employment records on a material job qualification.

14